STEVEN G. KALAR
Federal Public Defender
ANGELA CHUANG
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:	415.436.7700
Facsimile:	415.436.7706
Angela_chuang@fd.org

Counsel for Defendant BUCIO SANCHEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>MIGUEL BUCIO SANCHEZ,<br><br>  Defendant. | Case No. CR 19-576 VC<br><br>**DEFENDANT'S EMERGENCY MOTION FOR RELEASE FROM CUSTODY** |

# INTRODUCTION

Defendant Miguel Bucio Sanchez files this emergency motion for release from custody in light of the current coronavirus pandemic. The President has declared a national public health emergency, and the Governor of the State of California has declared a public health emergency throughout the state, both in response to the spread of the Coronavirus Disease 2019 (COVID-19). The six Bay Area counties are now subject to a shelter in place order given the severity of the disease. The Centers of Disease Control and Prevention (CDC) and other health authorities have advised people to take precautions to reduce the exposure to COVID-19 and to slow the spread of the disease.

Meanwhile, Mr. Bucio Sanchez remains detained at Santa Rita jail, a location that presents increased risk of catastrophic infection given the combination of poor health care and confined conditions. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Mr. Bucio Sanchez's release is warranted for both: the necessity of preparing his case for change of plea and sentencing as well as the compelling reason of personal health and safety. If released, Mr. Bucio Sanchez will live with his mother and siblings, and his mother would serve as both a surety and a custodian. He is agreeable to any reasonable restrictions the Court imposes, such as electronic monitoring.

# BACKGROUND

### I.   Changed Circumstances: COVID-19 Outbreak

As of March 12, 2020, the new strain of coronavirus which causes COVID-19, has infected over 132,300 people, leading to at least 4,954 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Newsom declared a State of Emergency and all six Bay Area counties are currently under a shelter in place order. As of March 17,

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.

*US v. Bucio Sanchez,* Case No. 19-576 VC;
Emergency Mtn for Release                    2

2020, there are a total of 470 positive cases and 12 deaths in California.[3] As of March 16, 2020, there are 40 positive cases of COVID-19 in the city of San Francisco alone. The numbers are rising exponentially. With confirmed cases in San Francisco and the entire Bay Area that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

## II.     Conditions of Confinement and Spread of Coronavirus

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[4] An opinion piece in the New York Times describes these unique and pressing issues. *Our Courts and Jails Are Putting Lives at Risk*, Emily Bazelon, New York Times, March 13, 2020, available at https://www.nytimes.com/2020/03/13/opinion/coronavirus-courts-jails.html?searchResultPosition=1. Inmates cycle in and out of detention facilities from all over the world country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening. Incarcerated people generally have poorer health than the general population, and even at the best of times, medical care in custody is (at best) limited.[5] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[6] Outbreaks of the flu regularly occur in jails and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[7] In China, officials have confirmed the coronavirus

---

[3] *L.A. County Confirms 50 New Coronavirus Cases as California Death Toll Rises to 12*, Los Angeles Times (March 17, 2020), *at* https://www.latimes.com/california/story/2020-03-17/california-death-toll-from-coronavirus-rises-to-11-amid-extraordinary-rules-to-slow-spread.

[4] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[5] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[6] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[7] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

spreading at a rapid pace in Chinese prisons, counting 500 cases.[8]  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[9] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[10] In the U.S. steps are already being taken in some jurisdictions to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing the admission of individuals arrested on non-violent misdemeanor charges.[11]

At Santa Rita jail there have been weeks of flu outbreaks, with different units being quarantined on a regular basis and yet infections continuing to spread. Inmates are in tight quarters, even more so with the closure of North County jail. Access to personal hygiene items is limited with only those inmates that have certain means able to purchase commissary (better/more soap and other hygiene items). Additionally, the jail has now restricted all visits to the jail and only allows attorney visits. No family, friends or even experts are allowed into the jail.

---

[8] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[9] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at*   https://cnn.it/2W4OpV7.

[10] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[11] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.). The Board of Corrections in New York City has joined these calls for release of inmates during this crisis (https://www.nydailynews.com/coronavirus/ny-coronavirus-board-of-correction-release-inmates-nyc-jails-20200317-sfavifzqznhwpayhtcmadwkh6e-story.html). Cuyahoga County (Ohio) is holding mass pleas and bail hearings to reduce the current jail population (https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html); Mahoning County (Ohio) jail is refusing all non-violent misdemeanor arrestees (https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/); see also Collin County (TX) (https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/); Los Angeles County (CA) (https://www.nbcnews.com/news/us-news/los-angeles-sheriff-releasing-inmates-urging-fewer-arrests-help-combat-n1161206).

Santa Rita jail lacks even some basic medical care and certainly lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into Santa Rita jail and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions

### III.    The Bail Reform Act Requires Mr. Bucio Sanchez's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).

On October 24, 2019, after stating that the question of detention or release on conditions was a close call, Magistrate Judge Bernard Zimmerman ordered Mr. Bucio Sanchez detained on the above-titled matter.[12] The circumstances that existed when Mr. Bucio Sanchez was ordered detained have now changed. There is a pandemic that poses a direct risk that is far greater if he continues to be detained during this public health crisis. He has also been in continuous custody since October 1, 2019, which has forced him into extended sobriety—thus, his underlying substance abuse problem that caused many of his law enforcement contacts in the first place no longer exerts an overwhelming hold on him. Finally, continuing to detain Mr. Bucio Sanchez severely restricts his ability to meet with counsel and to present critical issues for purposes of plea discussions and sentencing.

Specifically, Mr. Bucio Sanchez expects to change his plea in the near future, the exact details of which are still being worked out. Because of restrictions on visits to the jail and the public health dangers associated with such visits, counsel will not be able to review potential plea agreements or applications to enter a guilty plea for the foreseeable future.

---

[12] Judge Zimmerman does not regularly preside in San Francisco; therefore, this motion is being submitted to the duty magistrate judge.

*US v. Bucio Sanchez,* Case No. 19-576 VC;
Emergency Mtn for Release                5

If Mr. Bucio Sanchez were released from custody, he could meet with counsel in person or over video chat, in a setting that would more strongly guarantee confidentiality. He could additionally assist with investigating potential mitigation for sentencing. Mr. Bucio Sanchez has every incentive to abide by any conditions of release imposed by the Court. He, like everyone else in the Bay Area, will be subjected to a shelter in place order and could also be placed on location monitoring with strict home detention conditions. Mr. Bucio Sanchez's mother works as a housecleaner, and has been struggling to support herself and Mr. Bucio Sanchez's three younger siblings. Not only is the family's financial situation in peril, but she also now finds herself with three adolescents at home under a shelter in place order. If Mr. Bucio Sanchez were released, he would help to maintain the household and care for his siblings while his mother works (as much as possible under current constraints).

### IV.     Release Now Does Not Bind the Court Later

Importantly, granting Mr. Bucio Sanchez's release does not in any way bind the Court or limit the Court's options at later hearings. Should the Court determine that additional custody is appropriate, the Court can order such a sentence and Mr. Bucio Sanchez will surrender to custody as ordered. He fully understands that he must fully and completely abide by each and every order of this Court, and that if he does not, he likely will receive a harsher sentence as a consequence of his non-compliance. Moreover, if and when the coronavirus crisis ends and the Court believes that it is appropriate to remand Mr. Bucio Sanchez back to custody, it could do so at any time. Indeed, the Court could remand Mr. Bucio Sanchez to custody at any time during his release should he violate the terms of his pretrial release. He will not. He will abide by each and every conditions, participate in the plea discussions and eventually the sentencing process, appear at all hearings, and surrender himself to custody when the Court so orders.

### **CONCLUSION**

Thus, for the foregoing reasons, Mr. Bucio Sanchez requests that the Court grant his request for release on bond with his mother as both a surety and custodian. If COVID-19 gets into the jail, it is going to spread like wildfire. The medical care in the jail is subpar in the best of times; we can only imagine how catastrophic it will be if there is a greater stress on the system. He is not going to flee and has every incentive to abide by the Court's condition so that he can place himself in the best position

possible regarding his case. Should the Court wish to have a hearing on this Motion, Mr. Bucio Sanchez waives his appearance and defense counsel will appear telephonically pursuant to General Order 72.

Dated: __3/17/20_____                    Respectfully submitted,

                                             ___/S_____
                                             ANGELA CHUANG
                                             Assistant Federal Public Defender